## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **BOCCI DESIGN &** | ) | |
| **MANUFACTURING, INC.** | ) | **COMPLAINT** |
|  | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
|  | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
|  | ) | |
| **PRADO AMERICA, LLC; INTERTEK** | ) | |
| **TESTING SERVICES NA, INC.** | ) | |
|  | ) | |
| **Defendants.** | ) | |
|  | ) | |

NOW COMES Plaintiff BOCCI DESIGN & MANUFACTURING, INC. ("Plaintiff" or "Bocci"), by and through its undersigned counsel, and hereby files its Complaint against defendants PRADO AMERICA, LLC ("Prado") and INTERTEK TESTING SERVICES NA, INC. ("Intertek," and collectively with Prado, "Defendants") for injunctive and monetary relief. Plaintiff alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

### NATURE OF THE ACTION

1.    This is an action in which Bocci seeks damages and injunctive relief for direct patent infringement, inducement of infringement, and contributory infringement, all in violation of the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*; false patent marking in violation of the patent laws of the United States, 35 U.S.C. § 292; false advertising in violation of the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. §§ 2531 *et seq.*; cancellation of certain federally registered certification marks pursuant

to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and for unfair competition and civil conspiracy under Delaware common law, all resulting from the unlawful actions and conduct of Defendants, as set forth herein.

2.    Bocci's claims arise out of Prado's direct infringement, inducement of infringement, and/or contributory infringement of U.S. Patent No. 8,232,482 ("the '482 Patent," attached hereto as Exhibit A); direct infringement of the '482 Patent by Prado's customers, and/or installers and/or end-users, of Prado's Unifit model 9000-0003 or "Unifit hardwired" electrical outlets ("Unifit Hardwired Products") in accordance with Prado's provided instructions; Prado's false marking of its unpatented Unifit Hardwired Products as "patented"; Prado's false statements and misrepresentations about the quality and characteristics of the Unifit Hardwired Products; Intertek's contributory liability for Prado's false representations, and active aiding and abetting said conduct; and Prado's and Intertek's conspiracy to engage in and cover up said conduct; Intertek's failure to exercise legitimate control over its certification marks; and associated unlawful actions and conduct.

## THE PARTIES

3.    Plaintiff Bocci Design & Manufacturing, Inc. is a corporation organized and existing under the laws of Canada with a principal place of business at 495 Railway Street, Vancouver, British Columbia V6A 1A7. Bocci is a design research studio, lab, and factory recognized as a leader in the United States and globally in contemporary lighting and home décor design. Bocci established the U.S. and global markets for electrical outlets of a unique, flush-mount design for use in residential and commercial buildings, which Bocci originated with its patented devices and installation methods, sold under as the "22 System" suite of electrical devices.

4.     Bocci is the owner of all right and title in and to extensive intellectual property rights covering various aspects of the 22 System devices and installation methods, including without limitation an extensive and growing portfolio of granted U.S. patents, including without limitation the '482 Patent. Bocci is the owner of all right and title in and to the '482 Patent.

5.     Upon information and belief, defendant Prado America, LLC is a Delaware corporation with a registered agent for service of process at 1207 Delaware Ave., Wilmington, DE 19806, and with a principal place of business at 199 Water St., Floor 34, New York, NY 10038. Defendant Prado is the United States subsidiary or affiliate of Prado Europe bv ("Prado Europe"), a Belgian company formed in 2020, according to Prado Europe's marketing and public statements. Prado directly competes with Bocci in the market for electrical outlets, including without limitation the market that Bocci established for flush-mount electrical outlets for use in residential and commercial buildings.

6.     Upon information and belief, defendant Intertek Testing Services NA, Inc. is a New York corporation registered with the Delaware Secretary of State as a foreign corporation doing business in Delaware, and with a registered agent for service of process at 251 Little Falls Dr., Wilmington, DE 19808, with a principal place of business at 545 E. Algonquin Rd., Arlington Heights, IL, 60065. Upon information and belief, Intertek provides "Assurance, Testing, Inspection and Certification ('ATIC') Services" to customers in Delware and elsewhere, and offers manufacturers in Delaware, like Prado, and elsewhere the use of certification marks comprising or including the term "ETL" to indicate certification of compliance with safety and performance standards, including without limitation standards published by UL Standards & Engagement, a standards development organization and subsidiary of Underwriters Laboratories, Inc. ("UL").

Upon information and belief, Intertek provided such services to Prado, a Delaware corporation, concerning the Unifit Hardwired Products.

7.      Upon information and belief, Intertek is the owner of United States Registration Nos. 6,047,816 and 6,216,885 ("the Certification Mark Registrations," copies of which are attached hereto as Exhibits B1 and B2) for certification marks comprising or containing the term ETL ("the Certification Marks"), each of which, "as intended to be used by authorized persons, is intended to certify that the goods have met standards set by standard development organizations with respect to product safety or that the goods provided have met the product safety standards adopted by the certifier," for use with, among other goods, various electrical goods, including without limitation "residential electrical products."

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over the subject matter of Bocci's claims against Defendant pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

10.     Defendant Prado is subject to personal jurisdiction in this District arising from its acts occurring in this District and/or its purposeful availing itself of the privileges and protections of the laws of the State of Delaware.

11.     Defendant Intertek is subject to personal jurisdiction in this District arising from its acts occurring in this District and/or its purposeful availing itself of the privileges and protections of the laws of the State of Delaware.

12.     Upon information and belief, defendant Prado has employees and/or sales representatives in this District that have, among other things, tested and/or demonstrated and/or

installed the Unifit Hardwired Products; has customers who have installed or purchased for installation the Unifit Hardwired Products in this District, has sold and/or is offering for sale the Unifit Hardwired Products along with installation instructions in this District, and/or has made false and/or misleading statements concerning the Unifit Hardwired Products in this District.

13.    Upon information and belief, defendant Intertek has employees in this District that were contributorily responsible for Prado's false and/or misleading statements concerning the Unifit Hardwired Products in this District, has customers for its ATIC Services in this District, , including without limitation Prado; has sold and/or offered for sale its ATIC Services concerning the Unifit Hardwired Products in this District, including without limitation to Prado, and/or has performed testing on, including without limitation test installations of, the Unifit Hardwired Products in this District.

14.    Upon information and belief, defendant Prado has purposefully directly infringed at least one claim of the '482 Patent throughout the United States, including without limitation in this District.

15.    Upon information and belief, end-user customers of defendant Prado have directly infringed the '482 Patent throughout the United States, including without limitation in this District.

16.    Upon information and belief, defendant Prado has purposefully contributed to and/or induced customers to infringe the '482 Patent throughout the United States, including without limitation in this District.

17.    Upon information and belief, defendant Prado has otherwise purposefully availed itself of the privileges and protections of the laws of the State of Delaware, such that this Court's assertion of jurisdiction over Prado does not offend traditional notions of fair play and due process.

18.    Upon information and belief, defendant Intertek has purposefully and actively conspired with Prado concerning the false and/or misleading statements concerning the Unifit Hardwired Products in this District, has performed testing on, including without limitation test installations of, the Unifit Hardwired Products in this District; has administered the Certification Marks in this District, and/or has otherwise purposefully availed itself of the privileges and protections of the laws of the State of Delaware, such that this Court's assertion of jurisdiction over Intertek does not offend traditional notions of fair play and due process.

## FACTUAL BACKGROUND

### Framework of Electrical Product
### Manufacture, Sales, and Installation in the United States

19.    Electrical products, such as the electrical outlet products sold by Bocci and Prado, must satisfy certain safety, performance, and code standards to be acceptable for sale, purchase, and installation in residential and commercial buildings in the United States. Such products must meet the requirements of certain  product safety standards, as determined by third party testing and certification companies, and the installation requirements of the National Electrical Code ("NEC") or other state building codes, as determined by local Authorities Having Jurisdiction ("AHJ").

20.    With respect to product safety requirements, electrical outlets must be "listed" by a Nationally Recognized Testing Laboratory ("NRTL") such as UL, Intertek, or the Canadian Standards Association Group ("CSA"), which is accredited in the United States as an NRTL and employs certification marks including "cCSAus," indicating that a product meets combined U.S./Canada standards.

21.    Listing by an NRTL means that such product has been tested and certified to meet the NRTL's applicable safety standards and is authorized to bear the NRTL's "listing mark,"

subject to certain conditions imposed by the NRTL on the manufacturer. A designation on an electrical product, or statement by a manufacturer in marketing the product, that a product is UL Listed or ETL Listed represents that such products conform to the applicable UL Standard for Safety. For typical outlets, the relevant standard is UL 498 – Standard for Safety: Attachment Plugs and Receptacles ("UL 498"). UL 498 includes tests for mechanical endurance (plugging/unplugging cycles), strain relief, terminal pull-out, etc. As relevant to this action, UL 498 requires that devices intended for installation in standard outlet boxes (a/k/a junction boxes) will be designed so that wiring terminals or connections reside within or behind the cover of the outlet box and are not exposed externally to the outlet box.

22.    Electrical outlets also must comply with relevant NEC requirements, including without limitation and by way of example only, section 406.3(A), requiring that devices must be "listed" and installed in accordance with the required listing; section 406.3(B), requiring that devices must be installed in accordance with the manufacturer's instructions and in compliance with its listing; and other sections. By way of further example, and as relevant to this action, NEC Article 314 ("Outlet, Device, Pull, and Junction Boxes; Conduit Bodies; Fittings; and Handhole Enclosures") and its subsections govern junctions, boxes, conduit bodies, fittings, etc., and among other things, set forth how outlet boxes must be supported or anchored (*e.g.*, to a building's structural members) and requirements for secure installation (section 314.23) and require that every outlet box in a completed installation have a cover, faceplate, luminaire canopy, or similar element (section 314.25).

23.     Even if a device is listed by an NRTL, the local AHJ/building code inspector has final approval. AHJs and each relevant jurisdiction may adopt amendments or stricter requirements beyond the NEC.

24.     As noted above, each NRTL has its own registered certification marks (*e.g.*, "UL Listed," "ETL Listed," "cCSAus," (each a "Listing Mark")). AHJs and local building inspectors look for these marks and rely on them to confirm compliance. If a product does not bear a Listing Mark, AHJs and/or local building inspectors will reject the installed product and withhold their approval of the installation.

**The Problems Solved by Bocci's Patented
22 System Devices and Methods of Installation**

25.     Outlet boxes are a ubiquitous feature of modern residential and commercial construction. Typically, the outlet box encloses one or more electrical outlets or switches, to which wires are run from within the surrounding wall structure. The term "outlet box" applies regardless of whether the device mounted therein is in an electrical outlet, or switch, or serves some other function, and is interchangeable with the term "junction box."

26.     Despite advances in other areas of technology, outlet boxes and the installation of electrical outlets or switches therein remained little changed for at least the better part of a century until Bocci's development of its 22 System devices and methods. In a traditional installation, outlet boxes ordinarily took the form of a shell nailed to a stud or otherwise mounted to the internal structure of a wall, with the open side facing toward the front; wires were routed to the box and attached to the electrical outlet, which was within the interior of the box; and the open front of the box was then closed by a visible cover plate, having one or more openings through which the operative portion of the outlet, switch, or other component would protrude.

8

27.     From an aesthetic standpoint, the presence of visible cover plate came to be accepted as a necessary evil because the visible cover plate served a dual function—both a safety function and a decorative function, although an often undesirable one. Efforts to make visible outlet box covers more decorative often produced a more pronounced eyesore. Immediately before Bocci's development of its innovative 22 System, the trend had been to make the cover plate plain and utilitarian in appearance to minimize its visual impact as much as possible.

**Bocci's Development of the Patented 22 System**

28.     Bocci is a world leader in the design, development, and manufacturing of electrical lighting, among other home décor products. Bocci was founded in 2005 by Omer Arbel, a world-renowned multi-disciplinary artist, designer, and architect.  Mr. Arbel's designs, which encompass commercial products, buildings, exhibitions, installations, and performances, are numbered in order of creation, and currently stand at 141.

29.     Among Bocci's innovative product offerings are the 22 System of electrical and multimedia outlets and installation methods therefor. 22 System features cylindrical devices that lock securely into hidden mounting plates, thereby installing flush in millwork, glass, stone, tile, concrete, drywall, and other surfaces; eliminating visible cover plates or fasteners; and creating a minimal, flexible, and interchangeable alternative to traditional systems, which allows for seamless integration with any architectural finish.

30.     Bocci's innovative 22 System includes methods for installation, replacement, and interchangeability of its 22 System devices, which among other things, eliminates the need for removal of wall surface material when taking advantage of the flexibility and interchangeability of the 22 System devices.

31.     Importantly, 22 System mounting plates and devices work with conventional junction boxes and wiring systems. As a result, 22 System devices are UL-Listed as satisfying the UL 498 receptacle standard and the separate UL 514D cover standard.

32.     Bocci carefully designed and engineered its 22 System outlets to meet UL 498 and NEC installation requirements, as well as applicable CSA standards and the Canadian Electrical Code ("CEC"). This was no small engineering feat and was accomplished only after much testing, review, refinement, and concomitant investment of time, effort, and expense.

33.     Bocci also expended considerable time, effort, and expense to ensure that 22 System outlets would be accepted by AHJs for municipalities across the USA and Canada. Because Bocci's wall outlet was novel, and because outlet safety is essential in residential and commercial buildings, Bocci was required to educate AHJs specifically about the 22 System devices and installation thereof, conducting direct outreach to the AHJ community about the patented safety engineering of the 22 System, UL's certification of the 22 System devices to UL 498, and how the 22 System products and installation thereof meets the NEC and CEC installation requirements.

34.     Bocci also invested significant time, effort, and expense in research and development, marketing, and sales efforts to introduce its 22 System products. After introduction, Bocci's 22 System received multiple awards and was featured in several trade publications that highlighted its benefits.

35.     Bocci extensively invests resources and capital in the development of the United States market for its numerous products, including without limitation its 22 System products, and as a result of said investment, a significant portion of Bocci's global revenue and profits derive from the United States market.

**Bocci's Valuable Intellectual Property Rights in Its System**

36.     Bocci invested considerable resources, in the United States and elsewhere, in securing protection for its intellectual property rights related to the 22 System devices and methods, resulting in the issuance of multiple United States patents covering the 22 System devices and methods of installation, including without limitation U.S. Patent Nos. 7,956,295, granted June 7, 2011; 8,232,482, granted July 31, 2012; 8,912,439, granted December 16, 2014; and 12,451,675, issued October 21, 2025.

37.     On July 31, 2012, the United States Patent and Trademark Office duly issued United States Letters Patent No. 8,232,482 ("the '482 Patent"), entitled "Method and Apparatus for Finished Installation of Electrical Outlet Box Without Use of External Cover Plate," to inventor Omer Arbel. All right, title and interest in and to the '482 Patent have been assigned to Bocci, which is the sole owner of the '482 Patent. A true and correct copy of the '482 Patent is attached as Exhibit A.

**DEFENDANTS' UNLAWFUL CONDUCT**

**Prado's Willful Patent Infringement**

38.     Upon information and belief, Prado is manufacturing, selling, and/or offering for sale to customers, including without limitation end-users and/or installers, within the United States an electrical outlet, including without limitation multiple products marketed "Unifit," and including without limitation multiple products having the same "Unifit 9000-0003" or "Unifit hardwired" designation, *i.e.*, the Unifit Hardwired Products, that is intended to be, can only be, and is installed in a manner that practices every step of at least one claim of the '482 Patent.

11

39.    Upon information and belief, Prado is importing into the United States an electrical outlet, including without limitation multiple products marketed "Unifit," and including without limitation multiple products having the same "Unifit 9000-0003" or "Unifit hardwired" designation, *i.e.*, the Unifit Hardwired Products, that is intended to be, can only be, and is installed in a manner that practices every step of at least one claim of the '482 Patent.

40.    Upon information and belief, Prado has tested in the United States an electrical outlet, including without limitation multiple products marketed "Unifit," and including without limitation multiple products having the same "Unifit 9000-0003" or "Unifit hardwired" designation, *i.e.*, the Unifit Hardwired Products, that is intended to be, can only be, and is installed in a manner that practices every step of at least one claim of the '482 Patent.

41.    Upon information and belief, Prado has demonstrated, including without limitation to customers, end-users, installers, Intertek, and/or others in the United States, an electrical outlet, including without limitation multiple products marketed "Unifit," and including without limitation multiple products having the same "Unifit 9000-0003" or "Unifit hardwired" designation, *i.e.*, the Unifit Hardwired Products, that is intended to be, can only be, and is installed in a manner that practices every step of at least one claim of the '482 Patent.

42.    Upon information and belief, Prado itself has installed in the United States an electrical outlet, including without limitation multiple products marketed "Unifit," and including without limitation multiple products having the same "Unifit 9000-0003" or "Unifit hardwired" designation, *i.e.*, the Unifit Hardwired Products, that is intended to be, can only be, and is installed in a manner that practices every step of at least one claim of the '482 Patent.

43.    Upon information and belief, Prado has provided and is providing to customers, end-users, installers, and/or Intertek instructions for installation of the Unifit Hardwired Products in a manner that practices every step of at least one claim of the '482 Patent.

44.    Upon information and belief, at least one customer of Prado, end-user of the Unifit Hardwired Products, installer of the Unifit Hardwired Products, and/or Intertek has installed a Unifit Hardwired Product in a manner that practices every step of at least one claim of the '482 Patent.

45.    Upon information and belief, Prado's Unifit Hardwired Products cannot be installed in a manner that does not infringe at least one claim of the '482 Patent.

46.    Upon information and belief, Prado knew of the '482 Patent at all times relevant hereto and knew that the installation of the Unifit Hardwired Products by customers, end-users, installers, Intertek, or others, in accordance with Prado's provided installation instructions, would infringe the '482 Patent.

47.    Upon information and belief, Prado knew at all times relevant hereto that the Unifit Hardwired Products were especially made or especially adapted for use in a manner that would infringe the '482 Patent, and were not suitable for substantial noninfringing use or installation in a substantially noninfringing manner.

48.    Upon information and belief, Prado Prado's activities constitute direct infringement, inducement of infringement, and/or contributory infringement of the '482 Patent.

49.    Upon information and belief, Prado has engaged in the conduct described above intentionally, willfully, actively, knowingly and maliciously, in intentional disregard of Bocci's patent rights, and with the intention to harm Bocci.

50.     Upon information and belief, Prado had actual knowledge of Bocci's patent rights, in addition to constructive knowledge, prior to engaging the conduct described above.

51.     Upon information and belief, unless enjoined by this Court, Prado will continue its unlawful conduct.

**False Patent Marking and Additional Acts of False Advertising,<br>Deceptive Trade Practices, and Unfair Competition**

52.     Prado marks the Unifit Hardwired Products as "patented" by placing such a designation on the faces of the Unifit Hardwired Products themselves. An example of such marking is shown in Exhibit C.

53.     Upon information and belief, no issued United States patents exist whose claims cover the Unifit Hardwired Products, regardless of iteration; that is, neither Unifit Hardwired V1, Unifit Hardwired V2, nor Unifit Hardwired V3, each as defined below, fall within the claims of any issued United States patent.

54.     Upon information and belief, Prado has applied for patent protection for its Unifit Hardwired Products, and other products, both in the United States and internationally, and is extremely well-versed in the process of obtaining patent protection for inventions and knowledgeable about the distinction between a pending patent application and an issued patent, and consequently between advertising a product as "patent pending" and as "patented."

55.     Upon information and belief, Prado falsely, deceptively, and misleadingly marked the Unifit Hardwired Products as "patented" knowing that the marking was false and with an intent to deceive to public.

56.     Prado's false patent marking is, standing alone, a literally false and deceptive statement made with intent to deceive the public.

57.    In addition to and independent of Prado's false patent marking, Prado also represents that the Unifit Hardwired Products are "ETL Listed – UL Compliant." More particularly, Prado represents that each of the Unifit Hardwired Products "Conforms to UL Std. 498."

58.    Upon information and belief, the representation by Prado that the Unifit Hardwired Products are "UL Compliant" or "Conforming to UL Std. 498" is false and misleading because the Unifit Hardwired Products do not conform to or comply with UL 498.

59.    Upon information and belief, the Unifit Hardwired Products do not comply with the applicable City of New York statutory provisions relating to electrical products such as the Unifit Hardwired Products.

60.    Upon information and belief, Prado has modified the Unifit Hardwired Products over time since the product's introduction to the market, resulting in several iterations of the Unifit Hardwired Products. Importantly, upon information and belief, all of the successive iterations have used the same Unifit 9000-0003 or "Unifit hardwired" designation.

61.    Upon information and belief, Prado's first iteration of the Unifit Hardwired Products comprised the outlet device with a junction box free-floating behind the wall. The outlet device was not connected to the junction box and the junction box had no cover. Lack of an enclosed junction box is a serious and substantial safety hazard. This iteration of the Unifit Hardwired Products is referred to herein as "Unifit Hardwired V1."

62.    Upon information and belief, Prado's next iteration of the Unifit Hardwired Products was modified to add a cover plate to the junction box, but the junction box still was not

connected to the building framework, which is required under NEC. This iteration of the Unifit Hardwired Products is referred to herein as "Unifit Hardwired V2."

63.    Upon information and belief, Prado's next iteration of the Unifit Hardwired Products was modified to add an "optional self-contained cap" on the back of the outlet device. This iteration of the Unifit Hardwired Products is referred to herein as "Unifit Hardwired V3." Unifit Hardwired V3, if installed with the "optional self-contained cap," does not require a junction box because, if installed with the "optional self-contained cap," the wiring connections are concealed within the self-contained cap.

64.    Unifit Hardwired V1 and Unifit Hardwired V2 are incapable of satisfying UL 498 or the NEC. Any claim of UL 498 compliance with respect to Unifit Hardwired V1 or Unifit Hardwired V2 is literally false and/or misleading.

65.    Unifit Hardwired V3 may be capable of satisfying certain aspects of UL 498 and/or NEC, but only if installed with the "optional self-contained cap," and only if used with Romex-type "NM" wire and not with metal conduit installations.

66.    Unifit Hardwired V3 remains incapable of satisfying certain aspects of UL 498, including without limitation by lacking compliant safety instructions.

67.    Upon information and belief, Prado received Intertek certification for some iteration(s) of the Unifit Hardwired Products on or about August 28, 2024.

68.    Upon information and belief, Prado began marketing the Unifit Hardwired Products as NEC compliant no later than April 2024.

69.    Upon information and belief, because Prado, aided and abetted by Intertek and in conspiracy with Intertek, marketed all of Unifit Hardwired V1, Unifit Hardwired V2, and Unifit

Hardwired V3 as UL 498 compliant, without changing any model number or other designation, or any making any distinction in its marketing, installation instructions, or other public statements concerning the Unifit Hardwired Products, Prado's statements concerning compliance with UL 498 are literally false and/or misleading as to some or all of the Unifit Hardwired Products.

70.     Prado's false claims of compliance with UL 498 or that the Unifit Hardwired Products are ETL Listed / UL Listed  are prominently featured on the packaging of and installation instructions for the Unifit Hardwired Products, and marketing and advertising for the Unifit Hardwired Products, including without limitation Prado's website. The Unifit Hardwired Products are sold through Prado's website and other retail and wholesale sources nationwide.

71.     Upon information and belief, the display of the false advertising claims in connection with the Unifit Hardwired Products was intended to have and has had a major impact on the way in which consumers, architects, designers, purchasing agents, other specifiers, and AHJs view the effectiveness and safety of the Unifit Hardwired Products.

72.     Upon information and belief, Prado's false claim that the Unifit Hardwired Products comply with UL 498 presents serious fire and shock risks to persons and property for consumers and others who rely on the false claim.

73.     Upon information and belief, Prado has obtained certification of compliance with other UL standards, for other Prado products, directly through UL. That is, for products other than the Unifit Hardwired Products, Prado submitted products and information for testing and certification by UL directly, not through another NRTL authorized to certify compliance with UL standards, like Intertek.

74.     Upon information and belief, the Unifit Hardwired Products are the only products for which Prado chose Intertek to perform testing for UL compliance, as opposed to choosing UL itself to perform such testing.

75.     Upon information and belief, Prado purposefully chose to submit the Unifit Hardwired Products to Intertek, as opposed to UL, for testing for UL 498 compliance for the purpose of deceiving the public, and in furtherance of a conspiracy with Intertek to deceive the public, with respect to UL 498 compliance or non-compliance of the Unifit Hardwired Products.

76.     As early as April 8, 2025, representatives of Bocci communicated with representatives of Prado and/or its parent or affiliate, Prado Europe, concerning the inability of the Unifit Hardwired Products to comply with UL 498, and thus the falsity of Defendants' claims of UL 498 compliance, as well as the safety hazards associated with Prado's non-compliant Unifit Hardwired Products.

77.     Comments by representatives of Prado and/or its parent or affiliate, Prado Europe, during said communications constituted additional evidence of Prado's awareness of Bocci's patent rights.

78.     In addition to Prado's claim of compliance with UL 498, Prado also represents that the Unifit Hardwired Products comply with state statutory and other regulatory provisions relating to such products, including without limitation NEC provisions and provisions promulgated by the City of New York, including through the use of statements such as "approved by NYC DOB" in marketing materials for the Unifit Hardwired Products.

79.     Upon information and belief, each of (1) marking a product as "patented," and (2) marking or promoting a product as complying with UL or other certification standards, is intended

18

to, and each separately and independently has had, the effect of promoting consumer confidence, and thereby obtaining advantage in the marketplace.

80.     Upon information and belief, Prado's false patent marking constitutes additional evidence that it is more likely than not that Prado has also engaged in knowing and intentional false advertising, and Prado's false advertising constitutes additional evidence that it is more likely than not that Prado has engaged in knowing and intentional false patent marking.

81.     Upon information and belief, Prado has engaged in the conduct at issue intentionally, willfully and maliciously with knowledge that the claims being made are false and misleading, and with the intent to deceive the public, and with the intent to harm Bocci.

82.     Upon information and belief, unless enjoined by this Court, Prado will continue its unlawful conduct.

**Intertek's Misrepresentations; Contribution to, and Aiding and Abetting of Prado's Misrepresentations; Conspiracy With Prado; and Failure to Control the Certification Marks**

83.     Upon information and belief, Prado obtained from Intertek "ETL Listed" approval, and Intertek authorized Prado to use the "ETL Listed" Certification Marks, for Unifit Hardwired V1 and/or Unifit Hardwired V2, despite the fact that neither Unifit Hardwired V1 nor Unifit Hardwired V2 is, or could be, capable of satisfying UL 498.

84.     Upon information and belief, Intertek, acting negligently, recklessly, or knowingly and intentionally, falsely certified or approved Unifit Hardwired V1 and/or Unifit Hardwired V2 as "ETL Listed" or "UL 498" compliant, despite the fact that neither Unifit Hardwired V1 nor Unifit Hardwired V2 is, or could be, capable of satisfying UL 498.

85.    Upon information and belief, any certification by Intertek that Unifit Hardwired V1 or Unifit Hardwired V2 satisfies or is compliant with UL 498 is literally false.

86.    Upon information and belief, Intertek's certification that Unifit 9000-0003 or "Unifit hardwired" satisfies or is compliant with UL 498 is misleading, including without limitation as a result of Intertek's and Prado's knowing and intentional failure to distinguish between Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3.

87.    Upon information and belief, Prado obtained from Intertek "ETL Listed" authorization, and Intertek approved Prado to use the "ETL Listed" Certification Marks, for Unifit Hardwired V3, Prado obtained from Intertek approval, and Intertek approved Prado to use "UL Std. 498" compliant, and Intertek conspired with Prado to shield the fact that Prado and Intertek knew that such designation might apply only to Unifit Hardwired V3, and not to Unifit Hardwired V1 or Unifit Hardwired V2.[1]

88.    Upon information and belief Intertek and Prado engaged in the foregoing conduct to avoid a product recall of the noncompliant products and to avoid responsibility for acknowledging that the products were noncompliant.

89.    On or about November 20, 2024, well after the public release and/or introduction to the market of the Unifit Hardwired Products, Bocci's retained consulting expert, Charles Mello, filed an online Non-Conforming Product Complaint and Field Investigation Request ("NCP Complaint") with Intertek. No action having been taken by Intertek, Mr. Mello followed up on or about January 17, 2025. On or about January 20, 2025, an Intertek representative, Cat Hollis,

---

[1] As alleged, *supra*, Unifit Hardwired V3 may be capable of satisfying certain aspects of the UL 498 standard, but upon information and belief remains incapable of satisfying other aspects of the UL 498 standard relating to required safety instructions.

claimed never to have received the NCP Complaint. That same date, Mr. Mello re-submitted the NCP Complaint directly to the Intertek representative. No action having been taken, and having received no further response, Mr. Mello followed up on or about February 3, 2025. On or about February 11, 2025, Hollis stated that "[t]hese investigations can take up to 90 days but usually is [sic] completed before then." To date, Intertek has not taken any action on the NCP Complaint.

90.     On or about April 4, 2025, Bocci's outside counsel wrote to another Intertek representative, Sunny Rai, outlining in detail (1) the falsity of Intertek's public representation that certain Prado's Unifit Hardwired Products purportedly comply with UL 498, and that they are eligible to bear the ETL Listed Certification Marks; (2) that the Unifit Hardwired Products fail to satisfy UL 498 and cannot be installed to meet NEC requirements; (3) about the submission of the NCP Complaint and Intertek's failure to take action within either the 90 days represented as typical or any reasonable time period (134 days having passed at the time of the April 4, 2025, letter); and (4) that Intertek's continued inaction, allowing Prado to represent that the Unifit Hardwired Products are ETL Listed, and failure to withdraw certification of the Unifit Hardwired Products constitutes a significant public safety hazard and wrongful conduct that damages Bocci, and violates Intertek's obligation as owner of the Certification Marks to strictly enforce the standards for certification. Intertek did not respond to the April 4, 2025, letter.

91.     Upon information and belief, having negligently, recklessly, or knowingly and intentionally, falsely certified or approved Unifit Hardwired V1 and/or Unifit Hardwired V2 as UL 498 compliant, Intertek conspired with Prado to shield both its own and Prado's misrepresentations and wrongful conduct by certifying or approving Unifit Hardwired V3 as UL 498 compliant, under the same "Unifit 9000-0003" and/or "Unifit hardwired" branding, without

withdrawing Intertek's ETL Listing for Unifit Hardwired V1 or Unifit Hardwired V2, or otherwise issuing any public statement clarifying the distinctions between iterations of the Unifit Hardwired Products.

92.     Upon information and belief, Unifit Hardwired V1 and Unifit Hardwired V2 products remain for sale and available in the United States.

93.     Upon information and belief, Intertek's failure or refusal to withdraw its ETL Listed certification for, without limitation, at least Unifit Hardwired V1 and/or Unifit Hardwired V2 represents an ongoing substantial public safety hazard.

94.     Upon information and belief, Intertek's failure or refusal to withdraw its ETL Listed certification for, without limitation, at least Unifit Hardwired V1 and/or Unifit Hardwired V2 violates Intertek's own internal policies and procedures.

95.     Upon information and belief, Intertek's failure or refusal to withdraw its ETL Listed certification for, without limitation, at least Unifit Hardwired V1 and/or Unifit Hardwired V2 has been knowing and intentional, and intended to deceive the public by shielding Intertek's misconduct.

96.     Upon information and belief, Intertek's failure or refusal to withdraw its ETL Listed certification for, without limitation, at least Unifit Hardwired V1 and/or Unifit Hardwired V2 has been intended to shield Intertek's failure to exercise control over the use of the Certification Marks.

97.     Intertek's failure or refusal to withdraw its ETL Listed certification for, without limitation, at least Unifit Hardwired V1 and/or Unifit Hardwired V2 has resulted in Prado obtaining and maintaining a share of the market which would have gone to Bocci, but for Intertek's ETL Listed certification, and such intentional conduct has caused injury to Bocci.

98.    Upon information and belief, unless enjoined by this Court, Intertek will continue its unlawful conduct.

## COUNT I
## Direct Patent Infringement
### (against Prado)

99.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

100.    Bocci has sought and obtained patents related to its proprietary 22 System, including without limitation the '482 Patent.

101.    Bocci owns all right, title, and interest in and to the '482 Patent.

102.    The '482 Patent is valid and enforceable.

103.    Prado has directly infringed one or more claims of the '482 Patent through at least, and without limitation, testing and/or demonstration and/or installation of the Unifit Hardwired Products in a manner that practices each and every step of one or more claims of the '482 Patent.

104.    As a direct and proximate result of Prado's infringement of the '482 Patent, Bocci has been and continues to be damaged and irreparably harmed in its business and property, including without limitation the loss of substantial profits in an amount to be determined at trial. Upon information and belief, Prado's infringement of the '482 Patent will continue unless enjoined by this Court.

105.    By reason of the above acts, Prado has caused, is causing, and unless enjoined by this Court, will continue to cause great and irreparable injury to, among other things, the good will and business reputation of Bocci and its business relations with its customers, all of which cannot be adequately compensated or measured in monetary terms. Bocci has no adequate remedy at law

for Prado's infringement of the '482 Patent. Bocci is entitled to injunctive relief enjoining and restraining Prado, its officers, agents, servants, and employees, acting jointly or severally, and all persons acting in concert with it, and each of them, from further infringement of the '482 Patent .

106.    Upon information and belief, Prado's infringement of the '482 Patent is, has been, and continues to be willful, with knowledge of the '482 Patent and Bocci's rights in and to the '482 Patent, and in willful, wanton, and deliberate disregard thereof, making this an exceptional case under 35 U.S.C. § 285, and Bocci is entitled to attorney's fees and costs, and is entitled to an award of treble damages under 35 U.S.C. § 284.

107.    As a direct and proximate result of Prado's wrongful conduct, Bocci has suffered, and will continue to suffer, monetary damages in the amount to be proven at trial.

**COUNT II**
**Inducement of Patent Infringement**
**(against Prado)**

108.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

109.    At least one customer of Prado, end-user of the Unifit Hardwired Products, installer of the Unifit Hardwired Products, Intertek, and/or other third party has used and/or installed a Unifit Hardwired Product in a manner that directly infringes one or more claims of the '482 Patent.

110.    Prado has actively and knowingly induced and continues to actively and knowingly induce infringement of one or more claims of the '482 Patent through at least making, using, distributing, manufacturing, offering to sell, and/or selling to, and/or providing installation instructions to, and/or otherwise inducing its customers, end-users of the Unifit Hardwired

24

Products, installers of the Unifit Hardwired Products, Intertek, and/or others, to use and/or install at least the Unifit Hardwired Products.

111.    The Unifit Hardwired Products were designed and manufactured by Prado to be installed in a manner that infringes one or more claims of the '482 Patent and are not capable of being installed in a substantially noninfringing manner.

112.    Prado acted with knowledge of the '482 Patent and with knowledge that installation by customers, end-users, installers, Intertek, and/or others would infringe one or more claims of the '482 Patent.

113.    As a direct and proximate result of Prado's inducement of infringement of the '482 Patent, Bocci has been and continues to be damaged and irreparably harmed in its business and property, including without limitation the loss of substantial profits in an amount to be determined at trial. Upon information and belief, Prado's inducement of infringement of the '482 Patent will continue unless enjoined by this Court.

114.    By reason of the above acts, Prado has caused, is causing, and unless enjoined by this Court, will continue to cause great and irreparable injury to, among other things, the good will and business reputation of Bocci and its business relations with its customers, all of which cannot be adequately compensated or measured in monetary terms. Bocci has no adequate remedy at law for Prado's inducement of infringement of the '482 Patent. Bocci is entitled to injunctive relief enjoining and restraining Prado, its officers, agents, servants, and employees, acting jointly or severally, and all persons acting in concert with it, and each of them, from further inducement of infringement of the '482 Patent .

115.    Upon information and belief, Prado's inducement of infringement of the '482 Patent is, has been, and continues to be willful, with knowledge of the '482 Patent and Bocci's rights in and to the '482 Patent, and in willful, wanton, and deliberate disregard thereof, making this an exceptional case under 35 U.S.C. § 285, and Bocci is entitled to attorney's fees and costs, and is entitled to an award of treble damages under 35 U.S.C. § 284.

116.    As a direct and proximate result of Prado's wrongful conduct, Bocci has suffered, and will continue to suffer, monetary damages in the amount to be proven at trial.

**COUNT III**
**Contributory Patent Infringement**
**(against Prado)**

117.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

118.    At least one customer of Prado, end-user of the Unifit Hardwired Products, installer of the Unifit Hardwired Products, Intertek, and/or other third party has used and/or installed a Unifit Hardwired Product in a manner that directly infringes one or more claims of the '482 Patent.

119.    Prado has contributed to and continues to contribute to acts of infringement of one or more claims of the '482 Patent through at least offering to sell, selling, and/or importing within the United States the Unifit Hardwired Products knowing the same to be especially made or especially adapted for use in an infringement of the '482 Patent and not suitable for substantial noninfringing use.

120.    As a direct and proximate result of Prado's contributory infringement of the '482 Patent, Bocci has been and continues to be damaged and irreparably harmed in its business and property, including without limitation the loss of substantial profits in an amount to be determined

at trial. Upon information and belief, Prado's contributory infringement of the '482 Patent will continue unless enjoined by this Court.

121.    By reason of the above acts, Prado has caused, is causing, and unless enjoined by this Court, will continue to cause great and irreparable injury to, among other things, the good will and business reputation of Bocci and its business relations with its customers, all of which cannot be adequately compensated or measured in monetary terms. Bocci has no adequate remedy at law for Prado's contributory infringement of the '482 Patent. Bocci is entitled to injunctive relief enjoining and restraining Prado, its officers, agents, servants, and employees, acting jointly or severally, and all persons acting in concert with it, and each of them, from further contributory infringement of the '482 Patent.

122.    Upon information and belief, Prado's contributory infringement of the '482 Patent is, has been, and continues to be willful, with knowledge of the '482 Patent and Bocci's rights in and to the '482 Patent, and in willful, wanton, and deliberate disregard thereof, making this an exceptional case under 35 U.S.C. § 285, and Bocci is entitled to attorney's fees and costs, and is entitled to an award of treble damages under 35 U.S.C. § 284.

123.    As a direct and proximate result of Prado's wrongful conduct, Bocci has suffered, and will continue to suffer, monetary damages in the amount to be proven at trial.

**COUNT IV**
**False Patent Marking (35 U.S.C. § 292)**
**(against Prado)**

124.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

125.    Prado's false, deceptive, and misleading marking of any, each, or all, of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 as "patented," in addition violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), also separately and independently violates the prohibitions against false marking within the Patent Act, 25 U.S.C. § 292.

126.    Any, each, or all, of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 are unpatented articles.

127.    Any, each, or all, of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 do not fall within the limitations of any claim of any issued United States patent.

128.    Prado marked any, each, or all, of the unpatented Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 as patented for the purpose of deceiving the public.

129.    Prado falsely, deceptively, and misleadingly marked the Unifit Hardwired Products as "patented" to gain an unfair advantage in the marketplace.

130.    Prado's false, deceptive, and misleading marking of its Unifit Hardwired Products as "patented" has resulted in Prado obtaining and maintaining a share of the market which would have gone to, and will go to, Bocci, but for Prado's false marking of the Unifit Hardwired Products, and such false marking has caused substantial competitive injury to Bocci.

131.    Prado's false marking of its unpatented articles has caused and will continue to cause irreparable harm to Bocci unless and until Prado's conduct is enjoined by the Court, and Bocci has no adequate remedy at law.

132.    As a direct and proximate result of Prado's false marking of its unpatented articles, Bocci has suffered competitive injury, including without limitation loss of sales and market share,

harm to business reputation and goodwill, and other economic and consequential damages in an amount to be determined by the trier of fact.

## COUNT V
### False Advertising and Unfair Competition (15 U.S.C. § 1125(a))
### (against Prado and Intertek)

133.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

134.    Prado's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of its goods, including without limitation that any, each, or all of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 satisfies UL 498; and/or that there is no material distinction between Unifit Hardwired V1, Unifit Hardwired V2, or Unifit Hardwired V3 concerning UL 498 compliance; and/or that any, each, or all, of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 is patented, in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

135.    Prado's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of its goods has the capacity to deceive, and has deceived, consumers and has the capacity to influence, and has influenced, consumers' purchasing decisions.

136.    Prado's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of its goods has had a material effect on purchasing decisions.

137.    Prado's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of its goods has caused and will continue to cause irreparable harm to Bocci unless and until Prado's conduct is enjoined by the Court, and Bocci has no adequate remedy at law.

138.    As a direct and proximate result of Prado's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of its goods, Bocci has suffered damages in an amount to be determined by the trier of fact.

139.    Intertek's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods, including without limitation that any, each, or all of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 satisfies UL 498; and/or that there is no material distinction between Unifit Hardwired V1, Unifit Hardwired V2, or Unifit Hardwired V3 concerning UL 498 compliance, in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

140.    Intertek's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods has the capacity to deceive, and has deceived, consumers and has the capacity to influence, and has influenced, consumers' purchasing decisions.

141.    Intertek's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods has had a material effect on purchasing decisions.

142.    Intertek's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods has caused and will continue to cause irreparable harm to Bocci unless and until Intertek's conduct is enjoined by the Court, and Bocci has no adequate remedy at law.

143.    As a direct and proximate result of Intertek's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of its goods, Bocci has suffered damages in an amount to be determined by the trier of fact.

**COUNT VI**
**Contributory False Advertising**
**and Unfair Competition (15 U.S.C. § 1125(a))**
**(against Intertek)**

144.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

145.    Defendant Prado's false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of its goods, including without limitation that any, each, or all of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 satisfies UL 498; and/or that there is no material distinction between Unifit Hardwired V1, Unifit Hardwired V2, or Unifit Hardwired V3 concerning UL 498 compliance; and/or that any, each, or all, of Unifit Hardwired V1, Unifit Hardwired V2, and/or Unifit Hardwired V3 is patented, in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

146.    Defendant Intertek knew or had reason to know that Prado's representations concerning UL 498 compliance of, without limitation, at least Unifit Hardwired V1 and/or Unifit

31

Hardwired V2 were false or misleading. Intertek was informed, or will be shown to have had actual and constructive knowledge, that Unifit Hardwired V1 and/or Unifit Hardwired V2 failed to satisfy UL 498 and that maintaining the same model number and branding for Unifit Hardwired V3 would mislead consumers.

147.    Intertek materially participated in and contributed to, and/or induced Prado's false advertising by: (a) issuing and maintaining certification reports and marks that it knew or should have known would be used in Prado's advertising to misrepresent UL 498 compliance; (b) providing promotional authorization and public listings that were integral to Prado's marketing; and (c) failing to withdraw or correct such certifications after learning of noncompliance, thereby enabling Prado to continue disseminating the false claims.

148.    As a direct and proximate result of Intertek's knowing and material facilitation of Prado's false advertising, Bocci has suffered and will continue to suffer competitive injury, including diversion of sales, loss of market share, and damage to its business reputation and goodwill.

149.    By the acts described, Intertek is secondarily liable for contributory false advertising in violation of 15 U.S.C. §1125(a).

150.    As a direct and proximate result of Intertek's contributory false advertising, Bocci has suffered damages in an amount to be determined by the trier of fact.

### COUNT VII
### Cancellation of Certification Registrations
### (15 U.S.C. §§ 1054, 1064, 1119)
### (against Intertek)

151.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

152.    Intertek owns the Certification Mark Registrations for the Certification Marks, each of which, "as intended to be used by authorized persons, is intended to certify that the goods have met standards set by standard development organizations with respect to product safety or that the goods provided have met the product safety standards adopted by the certifier," for use with, among other goods, "residential electrical products."

153.    Intertek has failed to exercise reasonable control over the Certification Marks.

154.    The Certification Marks are registered to certify that goods bearing the mark meet specified standards of origin, manufacture, quality, or other characteristics, as stated in the Certification Mark Registrations and governing documents filed with the United States Patent and Trademark Office ("USPTO").

155.    Intertek has approved use of the Certification Marks without verifying that the goods or services meet the standards represented by the mark, including without limitation approving Prado's use of the Certification Marks to indicate compliance with UL 498 on or in connection with the Unifit Hardwired Products, in violation of 15 U.S.C. § 1054.

156.    Intertek has overlooked known violations of its stated certification standards, including instances where certified goods or services materially failed to conform to the UL 498 standard, including without limitation Prado's use of the Certification Marks on or in connection with the Unifit Hardwired Products.

157.    Intertek has failed to conduct meaningful inspection or ongoing monitoring of users of the Certification Mark, including without limitation Prado, instead relying on self-certification or cursory paperwork without substantive review or testing.

158.    Intertek's persistent failure to exercise reasonable control over use of the Certification Marks constitutes naked licensing, which results in abandonment of rights in the Certification Marks under 15 U.S.C. § 1127 and renders the Certification Mark Registrations subject to cancellation under 15 U.S.C. § 1064(5)(A).

159.    Bocci is a competitor to Prado and interested party within the meaning of 15 U.S.C. § 1064, and will be damaged by the continued registration of the Certification Marks, considering the unfair advantage given to Prado and/or other naked licensees.

160.    As a direct and proximate result of Intertek's lack of control, the Certification Marks have ceased to function as a reliable indicator of compliance with any defined standards, including without limitation UL 498, thereby misleading consumers and harming competitors, such as Bocci, to naked licensees that Intertek has improperly allowed to use the Certification Marks, such as Prado.

161.    As a direct and proximate result of Intertek's lack of control over the Certification Marks, the continued registration of the Certification Marks will cause irreparable harm to Bocci unless and until the Certification Mark Registrations are cancelled by the Court, and Bocci has no adequate remedy at law.

162.    As a direct and proximate result of Intertek's lack of control over the Certification Marks, Bocci has suffered competitive injury, including without limitation loss of sales and market share, harm to business reputation and goodwill, and other economic and consequential damages in an amount to be determined by the trier of fact.

## COUNT VIII
### Deceptive Trade Practices (6 Del. C. § 2532)
### (against Prado and Intertek)

163.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

164.    Defendants' false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods violate the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532.

165.    Defendants' false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods has the capacity to deceive, and has deceived, consumers and has the capacity to influence, and has influenced, consumers' purchasing decisions.

166.    Defendants' false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods has had a material effect on purchasing decisions.

167.    Defendants' false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods has caused and will continue to cause irreparable harm to Bocci unless and until Prado's conduct is enjoined by the Court, and Bocci has no adequate remedy at law.

168.    As a direct and proximate result of Defendants' false, deceptive, and misleading advertising, promotion, and other public representations concerning the nature, characteristics, and qualities of Prado's goods, Bocci has suffered damages, including without limitation loss of sales

and market share, harm to business reputation and goodwill, and other economic and consequential damages in an amount to be determined by the trier of fact.

## COUNT IX
## Civil Conspiracy
## (against Prado and Intertek)

169.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

170.    Defendants Prado and Intertek knowingly combined, confederated, and agreed with each other to engage in a course of conduct to misrepresent the certification and safety compliance of the Unifit Hardwired Products, including without limitation at least Unifit Hardwired V1 and/or Unifit Hardwired V2, to deceive consumers and suppress competition.

171.    In furtherance of their agreement, Defendants committed unlawful acts, including without limitation (a) False Advertising in Violation of the Lanham Act, 15 U.S.C. §1125(a), by disseminating false and misleading statements in interstate commerce that the Unifit Hardwired Products were certified to UL 498 safety standards when, in fact, Unifit Hardwired V1 and Unifit Hardwired V2 did not and could not meet those standards, and Unifit Hardwired V3 was marketed under the same model number to perpetuate confusion; and (b) Deceptive Trade Practices in Violation of 6 Del. C. §2532, by knowingly misrepresenting the characteristics, certification, and approval of the Unifit Hardwired Products and by engaging in conduct that caused a likelihood of confusion and misunderstanding as to the certification, sponsorship, and approval of said products.

172.    Prado knowingly and actively cooperated in this scheme by referencing in advertising, promotion, and other public statements that the Unifit Hardwired Products were UL

498 compliant despite knowing, or recklessly disregarding, that any, each, or all of the Unifit Hardwired Products were not UL 498 compliant.

173.    Intertek knowingly and actively cooperated in this scheme by (i) issuing and maintaining certifications or reports that it knew, or recklessly disregarded in knowing, did not accurately reflect UL 498 compliance; (ii) permitting and encouraging Prado to reference those certifications in advertising and marketing; and (iii) failing to revoke or correct certifications after learning of noncompliance, all with the purpose and effect of enabling and advancing the false advertising and deceptive trade practices described herein.

174.    As evidenced by, without limitation, Intertek's refusal or failure to withdraw its false certification of ETL Listing or UL 498 compliance for, without limitation, at least Unifit Hardwired V1 and Unifit Hardwired V2, Defendants' conspiracy is, and unlawful acts committed in furtherance thereof are, ongoing and has caused and will continue to cause irreparable harm to Bocci unless and until Defendants' conduct is enjoined by the Court, and Bocci has no adequate remedy at law.

175.    As a direct and proximate result of Defendants' conspiracy and the unlawful acts committed in furtherance thereof, Bocci has suffered and will continue to suffer substantial damages, including without limitation loss of sales and market share, harm to business reputation and goodwill, and other economic and consequential damages in an amount to be determined at trial.

**COUNT X**
**Common Law Unfair Competition**
**(against Prado and Intertek)**

176.    Bocci realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

177.    By reason of the foregoing, Defendants have engaged in unfair competition in violation of the common law of Delaware.

178.    Defendants' misconduct has caused and will continue to cause irreparable harm to Bocci unless and until Defendants' misconduct is enjoined by the Court, and Bocci has no adequate remedy at law.

179.    As a direct and proximate result of Defendants' unfair competition, Bocci has suffered and will continue to suffer substantial damages, including without limitation loss of sales and market share, harm to business reputation and goodwill, and other economic and consequential damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Bocci Design & Manufacturing, Inc. prays for judgment against defendants Prado America, LLC and Intertek Testing Services NA, Inc., as follows:

(1)    Finding that Prado has infringed, contributorily infringed, and/or induced infringement of the '482 Patent all in violation of 35 U.S.C. § 271;

(2)    Preliminarily and permanently enjoining Prado, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from infringing, contributorily infringing, or inducing others to infringe the '482 Patent;

(3)      Awarding Bocci damages, including lost profits and/or reasonable royalties, adequate to compensate for Prado's infringement of the '482 Patent pursuant to 35 U.S.C. § 284;

(4)      Finding that Prado's infringement was and has been knowing and willful;

(5)      Increasing the damages for infringement of the '482 Patent to three times the damages amount found by the jury or assessed by the Court pursuant to 35 U.S.C. § 284;

(6)      Declaring this case to be an exceptional case and awarding Bocci its attorneys' fees pursuant to 35 U.S.C. § 285;

(7)      Awarding Bocci costs and prejudgment interest pursuant to 35 U.S.C. § 284;

(8)      Finding that Defendants are jointly and severally liable for engaging in false advertising in violation of section 43(a) of the Lanham Act, deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, and unfair competition in violation of Delaware common law;

(9)      Preliminarily and permanently enjoining Defendants, their officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from falsely claiming that any of the Unifit Hardwired Products have characteristics or qualities that they do not have, including without limitation compliance with UL 498 or other applicable UL standards, the NEC, and/or state or local code provisions;

(10)     Requiring Prado to disseminate corrective advertising, in a form and manner to be approved by the Court, sufficient to remediate Defendants' past false and deceptive advertising;

(11)     Requiring Intertek to withdraw its ETL Listed and/or UL 498 compliant certifications for the Unifit Hardwired Products and to issue corrective public statements, in a form

39

and manner to be approved by the Court, sufficient to remediate Defendants' past false and deceptive statements;

(12)     Awarding Bocci damages, including damages to compensate Bocci for the injury caused by Defendants' false advertising and/or contributory false advertising, including without limitation lost sales and market share, and injury to reputation and goodwill, pursuant to 15 U.S .C. § 1117;

(13)     Awarding Bocci damages comprising a disgorgement of Defendants' profits unjustly obtained as a result of false advertising and/or contributory false advertising, pursuant to 15 U.S.C. § 1117;

(14)     Increasing the damages for false advertising and/or contributory false advertising to three times the damages amount found by the jury or assessed by the Court as a result of Defendants' intentional and willful conduct, pursuant to 15 U.S.C. § 1117;

(15)     Declaring this case to be an exceptional case and awarding Bocci its attorneys' fees pursuant to 15 U.S.C. § 1117;

(16)     Finding that Prado has violated 35 U.S.C. § 292 by marking and advertising articles sold in the United States with the word "patent," "patented," or other equivalent designations when no United States patent covers such articles, and by doing so for the purpose of deceiving the public;

(17)     Preliminarily and permanently enjoining Prado, its officers, agents, servants, employees, attorneys, successors, and all persons acting in concert with them from manufacturing, using, selling, offering for sale, or importing any product falsely marked as patented; distributing,

advertising, or otherwise disseminating any promotional material falsely representing that any product is patented; and engaging in any other conduct that would violate 35 U.S.C. § 292;

(18)    Awarding Bocci damages adequate to compensate it for the competitive injury it has suffered as a direct and proximate result of Prado's false patent marking, together with interest as allowed by law;

(19)    Awarding Bocci its costs of suit, including reasonable attorneys' fees and expenses, to the extent permitted by law or as may be found appropriate due to the willful and intentional nature of Prado's false patent marking;

(20)    Ordering the Director of the USPTO to cancel Registration Nos. 6,047,816 and 6,216,885 for the Certification Marks;

(21)    Awarding Bocci consequential and incidental damages recoverable under Delaware law;

(22)    Awarding Bocci reasonable attorneys' fees, expert fees, and litigation costs to the extent allowed by statute or other applicable law;

(23)    Awarding Bocci all measures of damages, including without limitation compensatory, consequential, special, and/or enhanced damages against Defendants in an amount to be proven at trial attributable to Defendants' misconduct under federal and state law;

(24)    Awarding Bocci punitive damages for Defendants' intentional, willful, and malicious conduct to the extent permitted by law;

(25)    Granting Bocci such other or further relief as the Court deems just, proper, and equitable.

41

## JURY DEMAND

Bocci hereby demands a trial by jury of all issues so triable.


Respectfully submitted, October 24, 2025

*/s/Brian Tome*
Brian Tome (Del. Bar No. 5300)
FISHERBROYLES LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 383-8136
Email: brian.tome@fisherbroyles.com

Thomas C. Lundin Jr.
(*pro hac vice* application forthcoming)
FISHERBROYLES LLP
Mailing: 111 Favre St.
        Waveland, MS 39576
Office:   945 East Paces Ferry Rd., Suite 2000
        Atlanta, GA 30326
Telephone: (678) 778-8857
Email: tom.lundin@fisherbroyles.com

*Attorneys for Plaintiff*
*Bocci Design & Manufacturing, Inc.*

42